## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **JENCO, LC, and DEAN GARDNER INVESTMENT, LC,**<br><br>Plaintiffs,<br><br>v.<br><br>**VALDERRA DEVELOPMENT, LLC, et al**,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Civil No. 4:24-cv-00019-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Valderra Development, LLC ("VDL"); Valderra Land Holdings, LLC ("VLH") (VDL and VLH will be collectively referred to herein as "Valderra Defendants"); and the Ledges of St. George Master Owners Association (the "Association").[1] The Court did not hear oral argument.[2] Based on the parties' briefing and the applicable law, the Court will grant in part and deny in part Defendants' Motion.

---

[1] ECF No. 46, filed August 18, 2025.

[2] Under DUCivR 7-1(g), a request for oral argument on a motion will be granted only on good cause shown. Otherwise, "the court will determine a motion based upon the parties' written memoranda." DUCivR 7-1(g). Here, Plaintiffs request a hearing in the caption of their Opposition but make no effort to show good cause. The Court is not persuaded that oral argument would be beneficial to the Court. Therefore, the Court finds that Plaintiffs have not demonstrated good cause to support the request for oral argument, and the request is denied.

## SUMMARY JUDGMENT RECORD

**A.    Evidentiary Objections**

Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." However, "[t]his does not mean that [summary judgment] evidence must be submitted 'in a form that would be admissible at trial.'"[3] Instead, only "the content or substance of the evidence must be admissible."[4]

*1.    Plaintiffs' Objections*

Plaintiffs object to several of Defendants' statements of fact on grounds including lack of foundation, vagueness and ambiguity, and mischaracterization of evidence. Several of these objections are accompanied by the following boilerplate statement:

> Owners dispute that Defendants are—or have ever been—authorized to use the Logo, either in whole or in part, for any purpose. Owners also dispute that Defendants are—or have ever been—authorized to use the Word Mark, either in whole or in part, for any purpose except to the extent expressly stated in the CC&Rs.[5]

While far from clearly stated, Plaintiffs' objections appear, for the most part, to take issue with how Defendants have characterized the evidence rather than with the evidence itself. A party's "statement of undisputed material facts is not evidence, it is a tool designed to assist courts with determining whether the moving party has met their burden."[6] "At summary judgment, courts rely on the underlying evidence, not the statements contained within a . . . statement of undisputed material facts, and so challenges should be directed at the evidence supporting those

---

[3] *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).
[4] *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).
[5] *See, e.g.*, ECF No. 55 at 3.
[6] *Sernoffsky v. Novak*, 773 F. Supp. 3d 988, 999 (S.D. Cal. 2025).

statements instead[.]"[7] In any event, Plaintiffs' objections "are so conclusory and lacking in analysis that they entirely fail to allege why 'the content or substance of the evidence' (or even the evidence as submitted) would not be admissible at trial."[8] "The objecting party must make its objection clear; the trial judge need not imagine all the possible grounds for an objection."[9] Because Plaintiffs have failed to provide any analysis or point to any legal rule supporting their objections, they have failed to provide the Court with an adequate basis to sustain the objections. Furthermore, it does not appear that Plaintiffs argue that any of the evidence cannot be presented in a form that may be admissible at trial. Thus, while the Court will address some of the objections specifically in the footnotes of the undisputed facts section, the Court overrules all of Plaintiffs' objections for the purpose of ruling on the Defendants' summary judgment motion.

2. *Defendants' Objections*

Defendants object to portions of Mr. Gilbert Jennings, the manager of Jenco LC's, declaration[10] as being merely conclusory. Although evidence at the summary judgment stage "need not be submitted 'in a form that would be admissible at trial[,]'"[11] a "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient."[12]

Plaintiffs rely on paragraphs 11, 12, and 13 to support their boilerplate statement described above. Paragraphs 11 and 12, however, appear to be conclusory, self-serving assertions. Although the Court will not disregard Mr. Jennings's affidavit in its entirety, the

---

[7] *Id.* at 999–1000 (internal citations omitted).
[8] *Stella v. Davis Cnty.*, No. 1:18-cv-002, 2019 WL 4601611, at *3 (D. Utah Sept. 23, 2019).
[9] *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 960–61 (10th Cir. 1993).
[10] ECF No. 55, Ex. 1.
[11] *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1999 (10th Cir. 2006) (quoting *Celotex Corp.*, 477 U.S. at 324).
[12] *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

Court finds that paragraphs 11 and 12 cannot alone be used to create a genuine dispute of material fact.

**B.    Undisputed Facts**

This action arises out of Defendants' alleged use of Plaintiffs' Trademarks. The Trademarks at issue include the following: (1) "The Ledges of St. George" standard character mark, registration number 3,222,476, registered March 27, 2007 (the "Word Mark")[13] and (2) a mark that "consists of the color(s) yellow, orange and dark orange appear in the miscellaneous design that is above the words The Ledges of St. George, the words The Ledges of St. George are written in Brown," registration number 3,236,789, registered May 1, 2007 (the "Logo").[14]

The Ledges of St. George community began development in approximately August of 2004, when a group identifying itself as the Ledges Partners submitted a zone change application to the City of St. George.[15] The development was proposed as a 1,093-acre community consisting of residential housing along with commercial and recreational areas, including a golf course.[16] The initial residential housing development, including phases 1, 2, 4, 5, 6, 8, and 10 of the Ledges of St. George, occurred within Association Property.[17]

The Association is a homeowners association made up of real properties geographically located within the master planned community known as The Ledges of St. George.[18] The Association was organized and incorporated on August 1, 2005 as "The Ledges of St. George

---

[13] ECF No. 46, Ex. 1.
[14] *Id*. Ex. 2. The Logo consists of a design plus words. The top portion of the Logo is referred to herein as the "Logomark," and the bottom portion is referred to herein as the "Logotype."
[15] *Id*. Ex. 24 ¶ 8; *see id*. Ex. 4 at SJR-0214.
[16] *Id*. Ex. 24 ¶ 9; *see id*. Ex. 4 at SJR-0215–17.
[17] *Id*. Ex. 24 ¶ 10; *see id*. Ex. 5.
[18] *Id*. Ex. 24 ¶ 5.

Master Owners Association" by way of Articles of Incorporation filed with the State of Utah[19] and was thus operating under the name prior to the registration of the Trademarks.[20] The majority of the property within the Association is located to the west of Highway 18.[21] Plaintiffs, on the other hand, control the majority of the properties located to the east of Highway 18, as well as the golf course property.[22]

On March 8, 2006, a Master Declaration of Covenants, Conditions, and Restrictions of the Ledges of St. George (the "CC&Rs") was recorded by Ledges Development, LLC with the Washington County Recorder as Document No. 20060007014.[23] The cover page for the CC&Rs includes the Logomark associated with the Ledges of St. George logo.[24] In the CC&Rs, Ledges

---

[19] *Id.* Ex. 24 ¶ 11; *see id.* Ex. 6.

[20] *See id.* Plaintiffs attempt to dispute this fact, but the evidence Plaintiffs proffer does not place this fact in controversy. ECF No. 55 at 7–8. Paragraphs 4 and 5 of Mr. Jennings's declaration discuss how the trademark assignment occurred in connection with Plaintiffs' purchase of the golf course. *Id.* Ex. 1. This has no bearing on the fact that the Association was operating under the name "The Ledges of St. George Master Home Association" prior to the Trademarks' registration. As has been discussed, paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact. And paragraph 13 also does not place this particular fact in controversy. Thus, Plaintiffs have failed to establish a genuine dispute regarding this fact. It may also be noted that while Plaintiffs "dispute that any goodwill in the Trademarks is solely attributable to the HOA," that dispute pertains to Defendants' legal arguments. *Id.* at 7–8. Defendants' SOMF does not state anything regarding goodwill. *See* ECF No. 46 at 10.

[21] ECF No. 46, Ex. 24 ¶ 6; *id.* Ex. 3.

[22] *Id.* Ex. 24 ¶ 7; *id.* Ex. 3. Plaintiffs "object to this SOMF because it lacks foundation and is vague." ECF No. 55 at 2. But Plaintiffs provide nothing further regarding why it lacks foundation or why it is vague. Moreover, Plaintiffs do not dispute that they control this property. In short, Plaintiffs have failed to offer an adequate basis for the Court to sustain this objection, and it is overruled for purposes of this Motion.

[23] ECF No. 46, Ex. 24 ¶ 12; *id.* Ex. 7.

[24] *Id.* Ex. 24 ¶ 13; *id.* Ex. 7. Plaintiffs "object to this SOMF because it is vague and ambiguous" but provide no explanation as to why it is vague and ambiguous. ECF No. 55 at 3. Any vagueness or ambiguity is not, however, at all apparent. Such a conclusory objection is thus insufficient, and the Court overrules the objection for the purposes of this Motion. Furthermore, Plaintiffs attempt to dispute this fact by stating their boilerplate statement that "Owners dispute Defendants are—or have ever been—authorized to use the Logo . . ." *Id.* In support, Plaintiffs point to paragraphs 11 to 13 of Mr. Jennings's declaration. *Id.* Ex. 1. But as the Court has

Development, LLC covenanted that the "Declaration and the Plat shall be construed as covenants of equitable servitude; shall run with the Property and be binding on all parties having any right, title, or interest in the Property or any part thereof . . .; and shall inure to the benefit of each Owner thereof."[25] The CC&Rs provide that

> Owners may use the name "The Ledges of St. George" or "The Ledges" in printed or promotional material where such term is used solely to specify that particular property is located within the Property. The Association shall be entitled to use the words "The Ledges of St. George" in its name.[26]

The term "owner" is defined as any "entity, person, or group of persons owning a fee simple title to any Unit that is within the Property."[27] The Association does not own fee-simple title to any Unit that is within the Property at issue in the CC&Rs.[28] The CC&Rs also provide that "[n]o person shall use the name 'The Ledges of St. George' or any derivative of such name or the corresponding logo in any printed or promotional material without [Ledges Development, LLC's] prior written consent."[29]

---

discussed, paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact. And paragraph 13 does nothing to place this particular fact in controversy. "[M]erely saying a fact is disputed does not make it so." *Sibley v. Sprint Nextel Corp.*, No. 08-cv-2063-KHV, 2016 WL 11185552, at *11 (D. Kan. Oct. 15, 2016). Therefore, Plaintiffs have failed to demonstrate a genuine dispute regarding this fact.

[25] ECF No. 46, Ex. 7 at 1.

[26] *Id*. at 7, § 2.8. Plaintiffs "object to this SOMF because it mischaracterizes the evidence and makes an improper legal conclusion." ECF No. 55 at 3. This SOMF is a direct quotation from the CC&Rs and does not contain any characterization of or extrapolation about the language's meaning. Plaintiffs' objection is overruled for the purposes of this Motion. Additionally, Plaintiffs attempt to dispute this fact with their boilerplate statement supported by Mr. Jennings's declaration. *Id*. Ex. 1. Again, paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact. And paragraph 13 does not place this particular fact in controversy. Plaintiffs have failed to demonstrate a genuine dispute regarding this fact.

[27] ECF No. 46, Ex. 7 at 4, § 1.25.

[28] ECF No. 55, Ex. 1 ¶ 10.

[29] ECF No. 46, Ex. 7 at 7, § 2.8.

6

The plat map for Phase 1 of the Ledges of St. George was recorded with the Washington County Recorder on August 1, 2006.[30] The owners' dedication for the Phase 1 plat map includes the signatures of the Plaintiffs' representatives.[31] The owners' dedication further states that the plat will "be hereafter know[n] as The Ledges of St. George Phase 1"[32] and "incorporated and made part of [the] plat" the CC&Rs.[33] Similarly, the plat maps for Phase 2,[34] 4,[35] 5,[36] and 6[37]

---

[30] *Id.* Ex. 8.

[31] *Id.* Plaintiffs "object to this SOMF because it mischaracterizes the evidence." ECF No. 55 at 3–4. However, Plaintiffs do not provide any explanation as to how it mischaracterizes the evidence, and it is not readily apparent. Indeed, the plat map appears to have signatures from Plaintiffs' representatives. ECF No. 46, Ex. 8. The Court thus overrules this objection for the purposes of this Motion. Plaintiffs also attempt to dispute this fact by pointing to Mr. Jennings's declaration. ECF No. 55, Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact. And paragraph 13 does not place this particular fact in controversy. Plaintiffs have thus failed to place this fact in dispute.

[32] ECF No. 46, Ex. 8. Plaintiffs "object to this SOMF because it is vague and ambiguous, mischaracterizes the evidence, and makes an improper legal conclusion." ECF No. 55 at 4. Plaintiffs, however, provide no explanation as to why it does any of these things, and it is not readily apparent that it does. Plaintiffs' objection is overruled for the purposes of this Motion.

[33] ECF No. 46, Ex. 8. Plaintiffs "object to this SOMF because it is vague and ambiguous, mischaracterizes the evidence, and makes an improper legal foundation." ECF No. 55 at 4. Again, Plaintiffs make no effort to support their cursory objection.

[34] ECF No. 46, Ex. 9. The Phase 2 plat map was recorded on March 8, 2006. *Id.* Plaintiffs "object to this SOMF because it is vague and ambiguous and mischaracterizes the evidence" but do not provide any further explanation. ECF No. 55 at 4. As this objection is entirely conclusory, as well as cursory, the Court overrules the objection for the purposes of this Motion.

[35] ECF No. 46, Ex. 10. The Phase 4 plat map was recorded on March 8, 2006. *Id.* Plaintiffs again "object to this SOMF because it is vague and ambiguous and mischaracterizes the evidence" but do not provide any further explanation. ECF No. 55 at 5. The Court overrules the objection for the purposes of this Motion. Plaintiffs also attempt to dispute this fact with Mr. Jennings's declaration. *Id.* Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs have failed to demonstrate a genuine dispute over this fact.

[36] ECF No. 46, Ex. 11. The Phase 5 plat map was recorded on April 25, 2006. *Id.* Plaintiffs provide the same boilerplate objections and grounds for dispute as above. ECF No. 55 at 5. Thus, as above, the Court overrules the objection for the purposes of this Motion and finds that Plaintiffs have failed to demonstrate a genuine dispute over this fact.

[37] ECF No. 46, Ex. 12. The Phase 6 plat map was recorded on February 16, 2007. *Id.* Plaintiffs provide the same boilerplate objections and grounds for dispute as above. ECF No. 55 at 5. Thus, as above, the Court overrules the objection for the purposes of this Motion and finds that Plaintiffs have failed to demonstrate a genuine dispute over this fact.

were recorded, subjecting the property to the CC&Rs.[38] The owners' dedication for the Phase 6

plat map includes the signatures of Plaintiffs' representatives and stated that the property was to

"be hereafter known as The Ledges of St. George Phase 6."[39] The plat map for Phase 8 of the

Ledges of St. George was recorded on February 16, 2007,[40] and the owners' dedication includes

signatures of Plaintiffs' representatives, dedicates the property "to be hereafter known as The

Ledges of St. George Phase 8," and subjects the property to the covenants set forth in the

CC&Rs.[41] Additionally, the plat map for Phase 10 of the Ledges of St. George was recorded on

February 23, 2007.[42] The owners' dedication for the Phase 10 plat map includes signatures of

---

[38] ECF No. 46, Exs. 9–12.

[39] ECF No. 46, Ex. 12. Plaintiffs "object to this SOMF because it is vague and ambiguous and mischaracterizes the evidence" but provide no further analysis. ECF No. 55 at 6. It appears that signatures of Plaintiffs' representatives are on the plat map and that the quoted language is reflected in the dedication section. ECF No. 46, Ex. 12. Thus, there appears to be no basis upon which to sustain this objection, and it is overruled for purposes of this Motion. Plaintiffs attempt to dispute this fact with their boilerplate statement supported by Mr. Jennings's declaration. ECF No. 55 at 6. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs thus fail to place this fact into dispute.

[40] ECF No. 46, Ex. 13. Plaintiffs again "object to this SOMF because it is vague and ambiguous and mischaracterizes the evidence" but do not provide any further explanation. ECF No. 55 at 6. As this objection is entirely cursory, the Court overrules the objection for the purposes of this Motion. Plaintiffs also attempt to dispute this fact with Mr. Jennings's declaration. *Id.* Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs have failed to demonstrate a genuine dispute over this fact.

[41] ECF No. 46, Ex. 13. Plaintiffs "object to this SOMF because it is vague and ambiguous and mischaracterizes the evidence" but provide no further analysis. ECF No. 55 at 6. It appears that signatures of Plaintiffs' representatives are on the plat map and that the quoted language is reflected in the dedication section. ECF No. 46, Ex. 13. The Court overrules this objection for purposes of this Motion. Plaintiffs attempt to dispute this fact with their boilerplate statement supported by Mr. Jennings's declaration. ECF No. 55, Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs thus fail to place this fact into dispute.

[42] ECF No. 46, Ex. 14. Plaintiffs again "object to this SOMF because it is vague and ambiguous and mischaracterizes the evidence" but do not provide any further explanation. ECF No. 55 at 7. The Court overrules the objection for the purposes of this Motion. Plaintiffs also attempt to

Plaintiffs' representatives, dedicates the property "to be hereafter known as The Ledges of St. George Phase 10," and subjects to property to the covenants set forth in the CC&Rs.[43] Phases 1, 2, 4, 5, 6, 8, and 10 of the Ledges of St. George remain Association property subject to the CC&Rs to the present day.[44]

On July 15, 2010, Ledges Development, LLC assigned to JENCO LC, Dean Gardner Investment LC, and F.M. Snow Properties, LLC all of Ledges Development, LLC's right, title, and interest in and to the Trademarks in connection with Plaintiffs' purchase of the golf course.[45] The agreement reads, "For good and valuable consideration . . . [Ledges Development, LLC] assigns, transfers and contributes to [Plaintiffs] . . . all of its right, title and interest in and to the Ledges Trademarks, together with the goodwill associated with or symbolized by the Ledges Trademarks."[46] On that same day, Ledges Development, LLC assigned to Defendant VDL all of

---

dispute this fact with Mr. Jennings's Declaration. *Id.* Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs have failed to demonstrate a genuine dispute over this fact.

[43] ECF No. 46, Ex. 14. Plaintiffs "object to this SOMF because it is vague and ambiguous and mischaracterizes the evidence" but provide no further analysis. ECF No. 55 at 7. It appears that signatures of Plaintiffs' representatives are on the plat map and that the quoted language is reflected in the dedication section. ECF No. 46, Ex. 14. The Court thus overrules this objection for purposes of this Motion. Plaintiffs attempt to dispute this fact with their boilerplate statement supported by Mr. Jennings's declaration. ECF No. 55, Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs thus fail to place this fact into dispute.

[44] ECF No. 46, Ex. 24 ¶ 29. Plaintiffs attempt to dispute this fact with their boilerplate statement supported by Mr. Jennings's declaration. ECF No. 55, Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and Paragraph 13 does not bear on this particular fact. Plaintiffs thus fail to place this fact into dispute.

[45] ECF No. 46, Ex. 15.

[46] *Id.* at 2.

its rights and interests as the declarant under the CC&Rs.[47] The Association continued in its status as an independent legal entity and was not transferred to Plaintiffs.[48] On February 3, 2015, Plaintiffs recorded the Master Declaration of Covenants, Conditions, and Restrictions of Ledges East, establishing Plaintiffs' Master Owners Association ("MOA").[49] The MOA is authorized to use the Trademarks.[50]

On May 1, 2013, Plaintiffs submitted a Combined Declaration of Use and Incontestability Under Sections 8 & 15 ("May 1, 2013 Declaration") to the United States Patent and Trademark Office ("USPTO") in order to maintain the Logo.[51] Therein, Plaintiffs submitted a specimen ("2013 Specimen") and certified that "[t]he mark is in use in commerce on or in connection with the goods and/or services . . . as evidenced by the attached specimen(s) showing the mark as used in commerce."[52] The description of "The Ledges of St. George" community submitted by Plaintiffs in the 2013 Specimen states that "The Ledges of St. George is an 1,100 acre resort

---

[47] *Id*. Ex. 16. Plaintiffs attempt to dispute this fact with their boilerplate statement supported by Mr. Jennings's declaration. ECF No. 55, Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs thus fail to place this fact into dispute.

[48] ECF No. 46, Ex. 24 ¶ 34. Plaintiffs attempt to dispute this fact with their boilerplate statement supported by Mr. Jennings's declaration. ECF No. 55, Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs thus fail to place this fact into dispute.

[49] ECF No. 64, Ex. 25.

[50] ECF No. 55, Ex. 1 ¶¶ 5–6.

[51] ECF No. 46, Ex. 17. Plaintiffs attempt to dispute this fact with Mr. Jennings's declaration. ECF No. 55, Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact.

[52] ECF No. 46, Ex. 17 at 7. Plaintiffs attempt to dispute this fact with Mr. Jennings's declaration. ECF No. 55, Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Moreover, with regard to Plaintiffs' contention that the USPTO filing was not directed at Defendants, Plaintiffs conflate argument with fact. It is undisputed that this language is in the May 1, 2013 Declaration.

community."[53] The 2013 Specimen further contains a page on "The Ledges West" that includes "Villas at Valderra," "Estates at Valderra," "Canyon Rim," and "Morning Rim," which are communities controlled by the Association.[54] Additionally, the 2013 Specimen includes a community map including Association Property,[55] as well as advertisements for sale of real property, three of the four of which are Association Property.[56]

On May 2, 2013, Plaintiffs submitted a Combined Declaration of Use and Incontestability Under Sections 8 & 15 ("May 2, 2013 Declaration") to the USPTO in order to maintain the Word Mark.[57] The Specimen submitted with the May 2, 2013 Declaration is the same Specimen previously submitted with the May 1, 2013 Declaration.[58] Three years later, on April 22, 2016, Plaintiffs submitted a new Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal of Registration of a Mark under Sections 8 & 9 ("April 2016 Declaration") to the

---

[53] ECF No. 46, Ex. 18 at 2. While the parties dispute what inference can be drawn from this, it is undisputed that this is what the description states.

[54] *Id*. Ex. 24 ¶ 35; *id*. Ex. 18 at 5. Again, while the parties dispute what inference can be drawn from this, it is undisputed that this is what the description states.

[55] *Id*. Ex. 24 ¶ 36; *id*. Ex. 18 at 4. Plaintiffs "object to this SOMF because it mischaracterizes the evidence" but fail to provide any further explanation. ECF No. 55 at 11. Plaintiffs' objection is thus overruled for the purposes of this Motion. Moreover, while the parties dispute what inference can be drawn from this, Plaintiffs have not offered any evidence disputing that the specimen contains this map.

[56] ECF No. 46, Ex. 24 ¶ 37; *id*. Ex. 18 at 3. Plaintiffs "object to this SOMF because it mischaracterizes the evidence" but fail to provide any further explanation. ECF No. 55 at 11. Plaintiffs' objection is overruled for the purposes of this Motion. While the parties dispute what inference can be drawn from this, Plaintiff does not offer anything to dispute that three of the four advertisements are for Association Property.

[57] ECF No. 46, Ex. 19. Plaintiffs "object to this SOMF because it lacks foundation, makes an improper assumption, and mischaracterizes the evidence" but fails to provide any further reasoning or analysis. ECF No. 55 at 12. The Court thus overrules this objection for the purposes of this Motion. Plaintiffs also attempt to dispute this fact by pointing to Mr. Jennings's declaration. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs thus fail to place this fact into dispute.

[58] ECF No. 46, Ex. 19 at 9–12. The parties dispute what inference can be drawn from this, but it is undisputed that the Specimens are the same.

USPTO.[59] The Specimen submitted in the April 2016 Declaration is identical to the 2013 Specimens.[60]

Plaintiffs maintain the website, the Ledges.com.[61] Properties listed on the website are posted after individual property owners contract with Ledges Realty, LLC.[62] Ledges Realty, LLC is controlled and managed by JMI Property Services, which is directed by Mr. Jennings.[63] The Ledges.com includes a "communities" link, which takes a user to a page that, under the header "Ledges of St. George," states that "[h]ere at The Ledges, we offer several communities to choose from . . . [b]rowse through our community pages to find just what you are looking for" followed by a link titled "Check Listings for Availability."[64] On the communities page, there is a map that includes the Association Property.[65] The link to "Check Listings for Availability" takes a potential user to a page on Plaintiffs' website containing real estate listings with a map on the left-hand portion of the side of the page.[66] Advertisements for the sale of Association Property

---

[59] *Id*. Ex. 20. The parties dispute what inference can be drawn from this, but it is undisputed that Plaintiffs submitted the April 2016 Declaration.

[60] *Id*. at 7–10. Again, the parties dispute what inference can be drawn from this, but it is undisputed that the Specimens are the same.

[61] ECF No. 55, Ex. 1 ¶ 19.

[62] *Id*.

[63] ECF No. 64, Ex. 27.

[64] ECF No. 46, Ex. 24 ¶ 38; *id*. Ex. 21. Plaintiffs "object to this SOMF because it mischaracterizes the evidence" but provide nothing beyond this cursory assertion. ECF No. 55 at 14. The Court overrule this objection for the purposes of this Motion. Plaintiffs also attempt to dispute this fact by pointing to Mr. Jennings's declaration. *Id*. Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material fact, and paragraph 13 does not bear on this particular fact. Plaintiffs fail to proffer anything showing that this is not what the website depicts.

[65] ECF No. 46, Ex. 24 ¶ 39; *id*. Ex. 21. While the parties dispute what inferences arise from this, Plaintiffs do not offer anything showing that this map is not included on the website.

[66] *Id*. Ex. 24 ¶ 40; *id*. Ex. 22. Plaintiffs "object to this SOMF because it is vague and ambiguous and mischaracterizes the evidence" but provide nothing beyond this cursory assertion. ECF No. 55 at 15. The Court overrules this objection for the purposes of this Motion. Plaintiffs also attempt to dispute this fact by pointing to Mr. Jennings's declaration. *Id*. Ex. 1. Paragraphs 11 and 12 are self-serving and conclusory assertions that cannot create a genuine dispute of material

appear on the page.[67]

The Association has historically operated the "ledgeshoa.com" website, a web portal Association homeowners can use to access the Association's community documents, community maps, rules and regulations, and forms.[68] The ledgeshoa.com website was managed by Alan Wright, a former director of the Association and a former manager of VLH and VDL.[69] Mr. Wright was instrumental in numerous dealings between Plaintiffs and Defendants and would have been involved in any discussions between any Defendants and Plaintiffs concerning use of the Trademarks.[70] Mr. Wright passed away on February 8, 2021.[71]

Throughout the period from the end of 2021 to early 2024, Owners and their agents have repeatedly informed Defendants and their agents that Defendants' use of the Trademarks is unauthorized and that Defendants have no license to use the Trademarks except to the extent expressly stated in the CC&Rs.[72]

Plaintiffs initiated this action on February 14, 2024.[73] Plaintiffs' Amended Complaint

---

fact, and paragraph 13 does not bear on this particular fact. Plaintiffs fail to proffer anything showing that this is not what the website depicts.

[67] ECF No. 46, Ex. 24 ¶ 41; *id*. Ex. 22. While the parties dispute what inferences arise from this, Plaintiff offers no evidence to dispute that real estate listings for Association Property appear on the web page.

[68] *Id*. Ex. 24 ¶¶ 42–43.

[69] *Id*. Ex. 24 ¶ 44.

[70] *Id*. Ex. 24 ¶ 45. Plaintiffs "object to this SOMF because it lacks foundation and is overly broad and entirely speculative." ECF No. 55 at 16. Plaintiffs provide no further analysis regarding this objection. Thus, the Court should overrule this objection for the purposes of this Motion. Plaintiffs also attempt to dispute this by suggesting others, such as Lynn Padan, may have relevant information. *Id*. Ex. 1 ¶ 14. They do not, however, dispute that Mr. Wright was involved in numerous discussions and had information.

[71] ECF No. 46, Ex. 23.

[72] ECF No. 55, Ex. 1 ¶ 13. While the CC&Rs seem to suggest Defendants may be able to use at least the Word Mark to a certain extent, what that extent is and whether they are able to use the Logo is disputed.

[73] ECF No. 1.

asserts the following claims: (1) Trademark Infringement under 15 U.S.C. § 1114; (2) False or Misleading Representations under 15 U.S.C. § 1125; (3) common law trademark infringement; (4) deceptive trade practices under Utah Code § 13–11a–4; (5) unfair competition under Utah Code § 13–5a–103; and (6) tortious interference with economic relations.[74] On August 18, 2025, Defendants filed the instant Motion seeking summary judgment in their favor on all claims.[75] Plaintiffs filed their response on October 27, 2025,[76] to which Defendants replied on December 12, 2025.[77]

## <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[78] "A fact is 'material' if, under the governing law, it could influence the outcome of the lawsuit."[79] "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmovant on the evidence presented."[80]

"In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[81] "The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party."[82]

---

[74] ECF No. 37.
[75] ECF No. 46.
[76] ECF No. 55.
[77] ECF No. 64.
[78] Fed. R. Civ. P. 56(a).
[79] *Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[80] *Id.*
[81] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).
[82] *Id.*

Rather, "[t]he litigant must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful."[83] In doing so, the nonmovant must set forth evidence of specific facts illustrating the existence of a genuine issue for trial.[84] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[85]

## **DISCUSSION**

### A.    **Trademark Claims**

Defendants seek summary judgment on Plaintiffs' Trademark Infringement under 15 U.S.C. § 1114 claim, Plaintiffs' False or Misleading Representations under 15 U.S.C. § 1125(a) claim, and Plaintiffs' common-law trademark infringement claim based on a number of equitable defenses. "Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a), provides that registration of a mark 'shall not preclude [another person] from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered.'"[86] "This section makes available common law defenses to alleged infringers of registered marks."[87] The Court will address Defendants' equitable defenses in turn.

### 1.    *Laches*

"The doctrine of laches 'is based upon [the] maxim that equity aids the vigilant and not those who slumber on their rights.'"[88] "Laches, in legal significance, is not mere delay, but delay

---

[83] *Id.*

[84] *Anderson*, 477 U.S. at 248.

[85] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[86] *GTE Corp. v. Williams*, 904 F.2d 536, 540 (10th Cir. 1990).

[87] *Id.*

[88] *Derma Pen, LLC v. 4EverYoung Ltd.*, 76 F. Supp. 3d 1308, 1322 (D. Utah 2014) (quoting *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 29, 289 P.3d 502) (alteration in original)).

that works to the disadvantage of another."[89] To establish that the application of the doctrine of laches is appropriate, "the defendant must demonstrate that there has been an unreasonable delay in asserting the claim *and* that the defendant was materially prejudiced by the delay."[90] This inquiry is "[b]y its very nature . . . fact intensive and depends on the unique circumstance of each case."[91] In determining whether there has been an unreasonable delay, "[t]he primary issue . . . is when [the plaintiff] knew or should have known of [the defendant's] conduct."[92] "[W]here the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."[93] As for material prejudice, it can be evidentiary or economic. "Evidentiary prejudice occurs when the defendant loses evidence due to the plaintiff's delay in bringing the suit[,]"[94] and it "includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died."[95] "The defendant must specifically identify the relevant evidence that has been lost."[96]

Here, neither of the parties make clear when Plaintiffs knew or should have known of Defendants' conduct, and "based on the evidence presented, it is not possible for the Court to pinpoint such a date."[97] Plaintiffs notified Defendants of the infringing conduct in 2021, but it is possible that Plaintiffs knew earlier. Defendants assert that there has been a delay of over a

---

[89] *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1208 (10th Cir. 2001).

[90] *Id*. (emphasis in original).

[91] *Hornady Mfg. Co. v. DoubleTap Ammunition, Inc.*, 835 F. Supp. 2d 1150, 1153 (D. Utah 2011).

[92] *Id*. (alterations in original).

[93] *Id*. (quoting *Johnston v. Standard Min. Co.*, 148 U.S. 360, 370 (1893)).

[94] *Ariix LLC v. Usana Health Scis., Inc.*, No. 2:22-cv-0313-JNP-DAO, 2023 WL 2574319, at *6 (D. Utah Mar. 20, 2023).

[95] *Id.* (quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001)).

[96] *Id*.

[97] *Hornady Mfg. Co.*, 835 F. Supp. 2d at 1155.

decade and seem to suggest that, on account of the CC&Rs, Plaintiffs knew or should have known of Defendants' use of the Trademarks in 2010, when Ledges Development, LLC assigned to Plaintiffs right, title, and interest in and to the Trademarks and assigned to Defendant VDL rights and interests as the declarant under the CC&Rs. But that Plaintiffs did not obtain control of the Association does not necessarily mean that Plaintiffs knew Defendants would continue using the Trademarks. Defendants further assert that Plaintiffs "certainly" knew Association property was being advertised in connection with the Trademarks by 2013, as Plaintiffs themselves presented Specimens to the USPTO including Association Property. But that Plaintiffs themselves associated the Association property with the Trademarks does not necessarily mean that Plaintiffs were aware that Defendants were still using the Trademarks.

Even assuming, however, that Plaintiffs knew as early as 2010 and that an unreasonable delay exists here, a genuine dispute of material fact exists as to material prejudice, which precludes summary judgment in Defendants' favor based on this defense. Defendants contend that they have experienced material evidentiary prejudice on account of the death of Mr. Wright in 2021. Mr. Wright, according to Defendants, would have testified on issues including consent, use of the trademark on the Association's website, and the course of the parties' dealings. While Mr. Wright's death may constitute prejudice to Defendants, whether it constitutes *material* prejudice is another matter. Defendants do not assert that Mr. Wright was the only individual with knowledge of the pertinent issues such that his testimony was the only way to obtain the necessary information, and Plaintiffs point to Lynn Padan, upon whose declaration Defendants' rely for this Motion,[98] as having information on these issues.[99] Having to construe the facts and

---

[98] ECF No. 46, Ex. 24.
[99] *See* ECF No. 55, Ex. 1 ¶ 14.

draw reasonable inferences in Plaintiffs' favor, it seems that, based on the evidence presented, a reasonable jury could find either way on this issue. Summary judgment is thus inappropriate on this basis.[100]

    2.    *Acquiescence*

Acquiescence is an affirmative defense requiring a "finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant."[101] "Acquiescence may be shown by evidence of course of dealing for so long a time that knowledge and acquiescence may be presumed."[102] It "requires proof even more demanding than a showing . . . that the party seeking to enforce its trademark rights has unreasonably delayed pursuing litigation and, as a result, has materially prejudiced the alleged infringer."[103] "While as a general matter, consent is a defense only with respect to acts undertaken before an effective termination of the consent, reliance on the consent or acquiescence of the trademark owner can create an estoppel which will preclude an effective termination of the consent."[104]

Defendants argue that Plaintiffs' including Association properties in their 2013 and 2016 USPTO specimens and on their website signaled to Defendants that Plaintiffs would not assert

---

[100] Plaintiffs contend that intentional infringement precludes the assertion of a laches defense and that laches do not bar injunctive relief when confusion is inevitable. While it appears that these approaches are employed in other circuits, *see, e.g. Danjaq LLC*, 263 F.3d 942 at 957; *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1207 (11th Cir. 1997), it does not appear that the Tenth Circuit has addressed the issues, and Plaintiffs do not direct the Court to any decisions from courts within this circuit adopting the approaches. In any event, because a genuine dispute of material fact exists as to material prejudice, the Court need not reach these arguments.
[101] *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547–48 (10th Cir. 2000) (quoting *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 569 (6th Cir. 2000)).
[102] *Trace Mins. Rsch., LC v. Min. Res. Int'l, Inc.*, 505 F. Supp. 2d 1233, 1241 (D. Utah 2007).
[103] *Creative Gifts, Inc.*, 235 F.3d at 548.
[104] *Trace Mins. Rsch., LC*, 505 F. Supp. 2d at 1241.

their Trademark rights against Defendants. Plaintiffs contend that these actions were not directed to Defendants and that Plaintiffs have, since 2021, told Defendants that their use of the Trademarks was unauthorized and infringing except to the extent described in the CC&Rs.[105] But Plaintiffs' registrations of their trademarks "constituted constructive notice to Defendants of Plaintiffs' marks."[106] And within that constructive notice, Plaintiffs themselves associated Defendants' property with the Trademarks, which would signal to Defendants that Plaintiffs consented to Defendants' use of the Trademarks in relation to the property. That property under Defendants' control was shown on Plaintiffs' website—which is directed to the public at large, including Defendants—under the Trademarks is further evidence that Plaintiffs consented to Defendants' use. While Plaintiffs may have communicated termination of consent in 2021, the evidence indicates a course of dealing for around a decade in which Plaintiffs were seemingly consenting to Defendants' use and doing nothing to stop that use.

Nonetheless, acquiescence requires proof of material or undue prejudice to the alleged infringer.[107] Prejudice, again, may be either economic or evidentiary. Defendants assert that the homeowners that make up the Association have made significant investment decisions based on the belief that the communities were part of the Ledges of St. George. Although the Court is sensitive to this concern, Defendants have not offered any evidence supporting this nor have they

---

[105] Again, while the CC&Rs seem to suggest Defendants may be able to use at least the Word Mark to a certain extent, what that extent is and whether they are able to use the Logo Mark is disputed.

[106] *Navajo Nation v. Urb. Outfitters, Inc.*, No. 12-195 BB/LAM, 2016 WL 3475341, at *2 (D.N.M. Mar. 31, 2016).

[107] See *Creative Gifts, Inc.*, 235 F.3d at 548; *Hodgdon Powder Co. v. Alliant Techsystems, Inc.*, 497 F. Supp. 2d 1221, 1235 (D. Kan. 2007) ("[Acquiescence] has three elements: (1) the senior user actively represented that it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused undue prejudice to defendant.").

explained how it economically impacts them. Thus, it cannot be said that, as a matter of law, Defendants have experienced material economic prejudice. Defendants further assert that they have experienced evidentiary prejudice due to Mr. Wright's death. But as discussed in relation to Defendants' laches defense, a genuine issue of material fact exists as to whether Mr. Wright's death amounts to material prejudice. Therefore, summary judgment is improper on this basis.[108]

### 3.    Unclean Hands

"[A] plaintiff's unclean hands will bar recovery for trademark infringement only if the inequitable conduct is 'related to the plaintiff's cause of action.'"[109] Within the Tenth Circuit, the unclean hands doctrine covers two types of conduct: (1) "inequitable conduct toward the public, such as deception in or misuse of the trademark itself, resulting in harm to the public such that it would be wrong for a court of equity to reward the plaintiff's conduct by granting relief,"[110] as well as (2) "when the plaintiff has acted inequitably toward the defendant *in relation to the trademark*."[111] "In trademark cases '[t]he burden of proof [to establish a plaintiff's unclean hands] falls on the party asserting the defense.'"[112]

---

[108] Plaintiffs also argue that, even where acquiescence is present, such acquiescence does not always bar injunctive relief if a court "determines that the likelihood of confusion is so great that it outweighs the effect of plaintiff's delay in bringing suit." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002). At least the Second and Eleventh Circuits have adopted this approach. *See id.*; *Kason Indus., Inc.*, 120 F.3d at 1207. However, because a genuine issue of material fact exists as to material prejudice, the Court need not reach this issue.

[109] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1255 (10th Cir. 2013) (quoting *Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004)).

[110] *Id.* (citation modified).

[111] *Id.* (emphasis in original).

[112] *Lodestar Anstalt v. Route 66 Junkyard Brewery LLC*, No. 1:17-cv-00062-JCH-JHR, 2019 WL 3767518, at *2 (D.N.M. Aug. 9, 2019) (alterations in original) (quoting *Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 364 (S.D.N.Y. 2008)).

"[I]nequitable conduct toward the public" includes "deception in or misuse of the trademark itself."[113] The Tenth Circuit cited *Clinton E. Worden & Company v. California Fig Syrup Company*, 187 U.S. 516 (1903) in relation to "deceptive" or "misuse" of the trademark toward the public.[114] In *Clinton*, the Supreme Court found that the trademark "Syrup of Figs" was, where the product did not contain figs,[115] "so plainly deceptive as to deprive the complainant company of the right to a remedy by way of an injunction by a court of equity."[116] Here, Defendants contend that Plaintiffs have contributed to the very confusion of which they now complain by including Association property in the USPTO Specimens and on Plaintiffs' website. However, while this conduct is not without its issues, it does not seem to rise to the level of clear deception involved in *Clinton*, where the trademark itself misrepresented the product's contents.

As for the second type of conduct, Defendants contend that Plaintiffs have acted inequitably toward Defendants in relation to the Trademarks because, again, Plaintiffs' actions have allegedly contributed to customer confusion. In doing so, Defendants argue that they need not show "unconscionable" conduct but merely "inequitable" conduct. However, it appears to the Court that, at least in this context, those words appear close to synonymous. The Tenth Circuit cited *Worthington* to illustrate a circumstance where the plaintiffs acted inequitably toward the defendants such that the doctrine of unclean hands was applicable.[117] In *Worthington*, both plaintiffs and defendants once "had legitimate use of the [] trademark and had invested in signs,

---

[113] *1-800 Contacts, Inc.*, 722 F.3d at 1255.
[114] *Id.*
[115] *See Clinton E. Worden & Co.*, 187 U.S. 516 at 537.
[116] *Id.* at 540.
[117] *1-800 Contacts, Inc.*, 722 F.3d at 1255.

menus and printed materials bearing that name."[118] The parties had been in arbitration related to the dispute, and an arbitrator had ordered the defendants to relinquish the trademark to plaintiffs.[119] However, the plaintiffs then "threw economic obstacles in the way of [defendants'] compliance with the arbitrator's decision awarding the trademark to the [plaintiffs]."[120] Thus, in essence, the plaintiffs' actions compelled the defendants to infringe upon the mark, and the plaintiffs then brought suit against defendants for that infringement. Under these circumstances, the Tenth Circuit affirmed the district's court application of the unclean hands doctrine.[121] Here, while Plaintiffs' actions may have contributed to alleged confusion, the circumstances do not appear analogous to those in *Worthington*. There is no evidence that Plaintiffs have taken actions related to the Trademarks to harm Defendants or that Defendants have experienced any harm. Indeed, Plaintiffs' actions have allowed Defendants to ride off of the goodwill of the Trademarks for some time.

Therefore, overall, it cannot be said that no reasonable jury would find that Plaintiffs acted without unclean hands. Summary judgment is inappropriate on this basis.

### 4.    Assignment in Gross

"Courts have consistently held that a valid assignment of a trademark or service mark requires the transfer of the goodwill associated with the mark."[122] "A trademark symbolizes the public's confidence or 'goodwill' in a particular product. However, it is no more than that, and is insignificant if separated from that confidence."[123] Thus, "a trademark is not the subject of

---

[118] *Worthington*, 386 F.3d at 1321.
[119] *Id*. at 1316.
[120] *Id*. at 1321.
[121] *Id*. at 1322.
[122] *Vittoria N. Am., LLC v. Euro-Asia Imports Inc.*, 278 F.3d 1076, 1082 (10th Cir. 2001).
[123] *Id*.

property except in connection with an existing business."[124] Nonetheless, "[i]t is not necessary that the entire business or its tangible assets be transferred; it is the goodwill of the business that must accompany the mark."[125] Where no tangible assets are transferred, such assignments are upheld "if . . . the assignee is producing a product or performing a service substantially similar to that of the assignor and . . . the consumers would not be deceived or harmed."[126]

Defendants contend that the transfer to Plaintiffs of the rights to the Trademarks constituted an assignment in gross because Plaintiffs did not also gain control of the Association. However, the assignment of the Trademarks was in connection with Plaintiffs' purchase of the golf course. Even if only Association property had been developed at the time of the Trademarks' assignment, the Ledges of St. George community had, since its inception, been planned to include the golf course and development beyond the Association property. After the assignment, Plaintiffs continued to develop the community under the Trademarks, and thus it seems that the assignment was done in furtherance of preserving continuity as Plaintiffs continued the planned development. Moreover, the language of the trademark assignment agreement indicates that the parties to the agreement intended to transfer the associated goodwill along with the trademarks. The agreement reads, "For good and valuable consideration . . . [Ledges Development, LLC] assigns, transfers and contributes to [Plaintiffs] . . . all of its right, title and interest in and to the Ledges Trademarks, *together with the goodwill associated with or symbolized by the Ledges Trademarks*."[127] Thus, based on the record before the Court, a reasonable jury could find that the goodwill associated with the Trademarks was transferred to

---

[124] *Id*. (citation modified).
[125] *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992).
[126] *Vittoria N. Am., LLC*, 278 F.3d at 1083.
[127] ECF No. 46, Ex. 15 at 2 (emphasis added).

Plaintiffs along with the Trademarks' rights. It cannot be said as a matter of law that this assignment constituted an impermissible assignment in gross, and summary judgment is denied on this basis.

**B.    Utah Truth in Advertising Act**

Defendants also seek summary judgment on Plaintiffs' claim for Deceptive Trade Practices under the Utah Truth in Advertising Act, Utah Code section 13–11a–4.[128]

*1.    Injunctive Relief*

Under the Utah Truth in Advertising Act, if a defendant has violated any of the provisions of the Act, a court "shall enjoin the defendant from continuance of the violation."[129] Nonetheless, the statute also provides the following:

(a) No action for injunctive relief may be brought for a violation of this chapter unless the complaining person first gives notice of the alleged violation to the prospective defendant and provides the prospective defendant an opportunity to promulgate a correction notice by the same media as the allegedly violating advertisement.

(b) If the prospective defendant does not promulgate a correction notice within 10 days of receipt of the notice, the complaining person may file a lawsuit under this chapter.[130]

"Absent this statutory notice, a plaintiff is not entitled to seek injunctive relief."[131]

Defendants contend that Plaintiffs never gave the required statutory notice. In response, Plaintiffs point to a somewhat conclusory statement from Mr. Jennings's declaration that

---

[128] "As a general rule, a court should apply the version of the act that was in effect at the time of the events giving rise to the suit." *Judkins v. Jenkins*, 996 F. Supp. 2d 1155, 1163 (D. Utah 2014). The incidents involved in this suit span from around 2010 to the present. Where the relevant provision was not altered in those years such that the language remains materially identical to the current version, the Court will refer to the current version of the Utah Truth in Advertising Act.
[129] Utah Code Ann. § 13–11a–4(1)(a)(ii).
[130] *Id.* § 13–11a–4(4)(a)-(b).
[131] *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1241 (D. Utah 2018).

provides that Plaintiffs repeatedly informed Defendants from 2021 to 2024 that Defendants' use of the Trademarks is unauthorized and infringing except to the extent expressly stated in the CC&Rs.[132] This, however, falls "far below the notice requirements of Utah Code section [13–11a–4(4)(a)-(b)]."[133] That section requires a prospective plaintiff to "give[] notice of the alleged violation [of the Utah Truth in Advertising Act] to the prospective defendant" and to "provide[] the prospective defendant an opportunity to promulgate a correction notice by the same media as the allegedly violating advertisement."[134] Although Plaintiffs may have notified Defendants of trademark infringement, nowhere do Plaintiffs assert, nor do they offer any evidence establishing, that they ever mentioned the Utah Truth in Advertising Act to Defendants or notified Defendants of any violation of the Act specifically. Furthermore, Plaintiffs do not assert nor offer evidence that they informed Defendants of the need to publish corrective notice. Therefore, no reasonable jury could find that Plaintiffs gave Defendants sufficient notice as required by statute, and Plaintiffs cannot prevail on an action for injunctive relief under the Act. The Court thus grants summary judgment in Defendants' favor on this claim to the extent it seeks injunctive relief.

  2. *Damages*

  Plaintiffs also seek damages in relation to this claim, but there is some disagreement within the federal district court of Utah as to whether a plaintiff may maintain an action for damages under the Act when a plaintiff cannot maintain one for injunctive relief. In *Proctor & Gamble Company v. Haugen*, 947 F. Supp. 1551, 1555 (D. Utah 1996), the court found that "a plaintiff must first give the required notice to entitle it to injunctive relief before that plaintiff

---

[132] *See* ECF No. 55, Ex. 1 ¶ 13.
[133] *Nunes*, 299 F. Supp. 3d at 1241.
[134] Utah Code Ann. § 13–11a–4(4)(a)-(b).

may sue for damages."[135] In coming to this conclusion, the *Proctor* court first reasoned that only requiring notice for injunctive relief "would lead to a troubling inconsistency between" sections 13–11a–4(1)(a)(ii) and 13–11a–4(4)(a).[136] Under section 13–11a–4(1)(a)(ii), if a "court finds that a defendant is violating or has violated the [Act], the court *shall* enjoin the defendant from further violations." But under section 13–11a–4(4)(a), "a court cannot grant injunctive relief to an aggrieved party unless that party first gave notice of the alleged violation to the other party."[137] "Accordingly, if a court allowed a plaintiff to sue for damages when that plaintiff had not given the required notice entitling it to injunctive relief, the court would find itself between contradictory statutory mandates"[138] where it is required to grant injunctive relief for violations of the Act but prohibited from doing so in the absence of notice. Relatedly, the *Proctor* court also reasoned that not requiring notice for damages would render meaningless the notice requirement, as "a plaintiff seeking injunctive relief who had not given the required notice could simply skirt that requirement and receive an injunction by suing for damages."[139] Furthermore, according to the *Proctor* court, "the plain language of section [13–11a–4(4)(b)] requires an aggrieved party to give notice before filing any lawsuit under the [Utah Truth in Advertising Act]."[140] This provision provides that "[i]f a prospective defendant does not promulgate a correction notice within [ten] days of receipt of the notice, the complaining person may file a lawsuit under this chapter."[141] Thus, "[a]n aggrieved party may not file any suit, for injunctive

---

[135] The *Proctor* reasoning was adopted in *Snap Advances LLC v. SHG of Illinois, LLC*, No. 2:18-CV-00016-BSJ, 2019 WL 7505555, at *2 (D. Utah Feb. 12, 2019).

[136] *Proctor*, 947 F. Supp. at 1555.While the statute was restructured in 2024, the relevant language is identical to the previous version analyzed in *Proctor*.

[137] *Id*.

[138] *Id*.

[139] *Id*. at 1556.

[140] *Id*.

[141] Utah Code Ann. § 13–11a–4(4)(b).

relief or damages, as long as it does not give notice to the allegedly violating party, because it is only by giving notice that the ten-day time limit begins to run."[142] The court in *Nunes*, however, provided a different view: "[t]he plain language of section [13–11a–4(4)(a)] creates a notice requirement only for an 'action for injunctive relief.' Reading this provision to require notice before suing for either injunctive relief or damages would turn the plain language of the statute on its head."[143]

This Court finds the *Proctor* reasoning persuasive, as the interpretation is supported by other provisions within the statute. For example, section 13-11a-4(1)(b) provides that when the court finds a violation of the Act, "*[i]n addition to injunctive relief*, the plaintiff is entitled to recover from the defendant the amount of actual damages sustained or $2,000, whichever is greater." This suggests that damages are awarded in addition to the injunction rather than separate from or in lieu of. Thus, Court will adopt the reasoning set forth in *Proctor*. Because, as discussed above, no reasonable jury could find that Plaintiffs gave Defendants sufficient statutory notice, the Court grants summary judgment in Defendants' favor on this claim to the extent it seeks damages.

## C.    Unfair Competition and Tortious Interference Claims

Defendants argue that Plaintiffs' unfair competition and tortious interference with economic relations claims must fail because they are premised on Plaintiffs' flawed trademark claims. However, summary judgment is inappropriate on Plaintiffs' trademark claims. Thus, it cannot be said that these claims, by their relation to the trademark claims, must fail. Summary judgment is denied as to these claims.

---

[142] *Proctor*, 947 F. Supp. at 1556.
[143] *Nunes*, 299 F. Supp. 3d at 1241 n.6.

## **ORDER**

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART

Defendant's Motion for Summary Judgment (ECF No. 46) as follows:

1. Summary judgment is GRANTED in Defendants' favor on Plaintiffs' 4th cause of
   action for Deceptive Trade Practices under the Utah Truth in Advertising Act.

2. Summary judgment is DENIED as to Plaintiffs' remaining claims.

DATED this 2nd day of March 2026. BY THE COURT:

_____
Ann Marie McIff Allen
United States District Judge